IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEPHEN C. DRING
:

:

v.                         : Civil Action No. DKC 2005-2804

:

WILLIAM SULLIVAN
:

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this defamation
case are (1) the motion of Defendant William Sullivan to dismiss
for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)
and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6)
(paper 7), and (2) the motion of Plaintiff Stephen C. Dring for
leave to file surreply (paper 13).  The issues have been briefed
fully and the court now rules, no hearing being deemed necessary.
Local Rule 105.6.  For the following reasons, the court finds that
it lacks personal jurisdiction over Defendant.  Because Plaintiff
has not addressed the issue of transfer, the court will defer
entering an order to allow Plaintiff to move to transfer, if he
wishes.  In light of the foregoing, the court will not consider
Defendant's motion to dismiss based on failure to state a claim.
The court will deny Plaintiff's motion for leave to file surreply.

**I.   Background**

Plaintiff, who filed a single count complaint alleging
defamation, is a resident of Montgomery County, Maryland.

Defendant is a resident of New Jersey.[1]  Both Plaintiff and Defendant are certified International Referees for tae kwon do events, and both are involved in national and international tae kwon do competitions.  Plaintiff alleges the following.  On or about August 30, 2005, Defendant circulated an e-mail attacking Plaintiff and another International Referee ("IR"), Chuong Pham, through an Internet listserv for Taekwondo Referees United for Excellence ("TRUE").[2]  The e-mail discusses an upcoming election to the Board of Governors ("Board") for USA Taekowndo ("USAT").  In the e-mail, Defendant urges support for the candidacy of John Holloway, and accuses two other candidates, Plaintiff and Mr. Pham, of being corrupt and unethical.  All three of the candidates are from Maryland.

More specifically, Plaintiff alleges that the e-mail accuses Plaintiff of lying, cheating, and participating in bribery "and other corrupt and unethical practices in connection with his activities in the sport of Tae Kwon Do as a referee and otherwise." (Paper 1, ¶ 12.)  For instance, Defendant alleges that Plaintiff used bribery to obtain his position as Executive Director of the

---

[1] Plaintiff's complaint does not state the basis for federal court jurisdiction, although the Civil Cover Sheet recites diversity of citizenship as the basis for federal jurisdiction.

[2] Plaintiff also asserts that Defendant's e-mail was posted to two Web sites that are visited by those involved or interested in tae kwon do competition and the governance thereof. Plaintiff does not allege facts indicating that Defendant had any role in posting the alleged defamation on these two Web sites.

Pan American Taekwondo Union ("PATU"), and accuses Plaintiff of being in a "pay-to-play scam in PATU." *Id.* at ¶ 14. Defendant also accused Plaintiff of accumulating fraudulent IR credits.

Plaintiff asserts that the statements are untrue and defamatory; Defendant intended to injure Plaintiff in his professional activities as a tae kwon do referee and official at the national and international level, as well as within the various tae kwon do governing bodies; and that his reputation was injured in Maryland. Plaintiff alleges that Defendant acted with actual malice knowing that the statements were false. As a result of the e-mail, Plaintiff's name was not included on a list of Board candidates. In addition, Plaintiff is concerned that, because of the e-mail, he may not be selected to officiate at the 2008 Beijing Olympic Games.

## II.  Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a

separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).  If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction."  *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676.  In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

## III. Analysis

Defendant has moved to dismiss Plaintiff's complaint on the ground that his contact with Maryland – the August 30, 2005, e-mail message distributed via a listserv – is insufficient to subject him to personal jurisdiction.  Plaintiff responds that specific jurisdiction over Defendant is proper because the brunt of the injury Plaintiff suffered was in Maryland, where Plaintiff is involved in tae kwon do activities, and because Defendant purposefully directed his e-mail statement to Maryland.[3]  Plaintiff

---

[3] Plaintiff does not argue that Defendant has sufficient contacts with Maryland such that this court may exercise general jurisdiction.

does not address whether Defendant's contacts are sufficient to satisfy Maryland's long-arm statute.

The listserv has 69 members and is operated by TRUE.[4]  The listserv disseminates e-mails of interest to other referees and members of the tae kwon do community who subscribe.  Plaintiff does not state exactly how many subscribers are in Maryland, although Plaintiff alleges that the e-mail reached at least three recipients in Maryland: Plaintiff, Mr. Pham, and Mr. Holloway.  The e-mail appears to have reached other members of the Maryland tae kwon do community, including the Maryland State Tae Kwon Do Executive Committee and the Maryland State Vice-Chairman of the Referee Committee, although it is unclear whether they learned of the e-mail as listserv members or from another source.

A federal district court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Many courts have concluded that Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment.  *See ALS Scan, Inc. v. Digital*

---

[4] TRUE also operates a Web site.  (Paper 11, ex. 1, ¶ 11). There are no allegations that any defamatory statements were posted on the Web site.

5

*Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212-13 (4th Cir. 2002).

In applying Maryland's long-arm statute, federal courts often state that "[the] statutory inquiry merges with [the] constitutional inquiry." *Carefirst*, 334 F.3d 390, 396-97 (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996), *cert denied*, 519 U.S. 983 (1996)); *see also ALS Scan*, 293 F.3d at 710; *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 119 n.2 (D.Md. 1995)(stating that the federal courts use the "merged into one" language). The Court of Appeals of Maryland recently included this "merged into one" language in *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 2 (2005), in which the court stated: "Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination."[5]

---

[5] Earlier decisions by the Court of Appeals did not state that the statutory inquiry merges with the constitutional examination. Instead, the decisions explained the two steps are "interrelated" or "coextensive." *See Mohamed v. Michael*, 279 Md. 653, 657 (1977)(stating that the court "has consistently indicated that the two considerations are interrelated"); *Geelhoed v. Jensen*, 277 Md. 220, 227 (1976)(stating that terms such as "persistent course of conduct" in Maryland's long-arm statute "are meant to be coextensive with the requirements of due process").

Courts that cite this "merged into one" language typically do not discuss the long-arm statute, and instead proceed directly to the constitutional analysis. *See, e.g., Carefirst,* 334 F.3d at 397; *ALS Scan,* 293 F.3d at 711; *Realtime Gaming,* 388 Md. at 22.

The Court of Appeals more recently clarified that analysis under the long-arm statute remains a requirement of the personal jurisdiction analysis. *Mackey v. Compass Mktg, Inc.,* __ A.2d __, No. 2006 WL 321962, *11 n.6 (Md. Feb. 9, 2006)(stating that in *Realtime Gaming,* "[w]e did not, of course, mean . . . that it is now permissible to simply dispense with analysis under the long-arm statute"). Moreover, the Court of Appeals has recognized that there may be cases in which the facts satisfy constitutional due process but do not satisfy Maryland's long-arm statute. *See Krashes v. White,* 275 Md. 549, 559 (1975)("Perhaps fact situations will arise which will be deemed outside the scope of the Maryland 'long arm' statute, although there may be a constitutional basis for jurisdiction over the nonresident defendant."). In *Coleman & Associates,* Chief Judge Motz offered the following insight about the intersection between the long-arm statute and the constitutional inquiry:

> In my view it does not follow from the principle that the General Assembly intended to "expand the exercise of personal jurisdiction to the limits of the due process clause" that the language of the long arm statute should be ignored; rather, a more correct understanding of the first principle is that to the extent that a defendant's

> activities are covered by the statutory
> language, the reach of the statute extends to
> the outermost boundaries of the due process
> clause.

887 F.Supp. at 118-19 n.2.

It is appropriate, then, to begin with analysis of the long-arm statute.  Maryland's statute provides in part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; . . .

Md. Code Ann., Cts. & Jud. Proc., § 6-103.  There is a limiting condition in subsection (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."  In addition, "[t]he provisions in this section apply to computer information and computer programs in the same manner as they apply to goods and services."  § 6-103(c)(2).  Computer information is defined as "information in electronic form which is obtained from or through the use of a computer or which is in a form capable of

being processed by a computer.  The term includes a copy of the information and any documentation or packaging associated with the copy." Md. Code Ann., Com. Law, § 22-102(10).  Computer program is defined as "a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result. The term does not include separately identifiable information content." Md. Code Ann., Com. Law, § 22-102(12).

Plaintiff does not specify which subsection of Maryland's long-arm statute he believes applies to Defendant's contacts.[6] Defendant recites Maryland's long-arm statute and states that general jurisdiction does not exist, however he, too, does not specifically address any subsections until his reply memorandum, where he argues that subsection (b)(4) is the only section that could apply to Defendant and that his contacts fail to meet the standard in (b)(4).

Defendant's conduct does not satisfy subsection (b)(1). Although this subsection may be applied to tort claims, *see Mohamed v. Michael*, 279 Md. 653 (1977), and it appears arguable that Defendant performed work or service in Maryland in connection with his referee duties, the cause of action does not arise from that work or service.  Subsection (b)(2) obviously does not apply

---

[6] Judge Blake suggested in *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 704 & n.1 (D.Md. 2004), that dismissal might be appropriate if a plaintiff fails to identify a specific Maryland statutory provision authorizing jurisdiction either in the complaint or in an opposition to a motion to dismiss.

inasmuch as no contract is implicated.  Subsection (b)(3) also is inapplicable.  Courts have held that this subsection requires that both the tortious injury and the tortious act must have occurred in Maryland.  *See Layton v. AAMCO Transmissions,* 717 F.Supp. 368, 370 (D.Md. 1989); *Craig v. Gen. Fin. Corp. of Ill.*, 504 F.Supp. 1033, 1037 (D. Md. 1980); *Zinz v. Evans and Mitchell Indus.*, 22 Md.App. 126 (1974), *cert. denied*, 272 Md. 751 (1974).  Here, there is no evidence that Defendant sent the e-mail in question from Maryland.  Plaintiff himself appears to concede that Defendant's conduct took place in New Jersey when he states that "Defendant sat at a computer in New Jersey." (Paper 11, at 10).  Because the tortious act did not occur in Maryland, the court does not have jurisdiction pursuant to subsection (b)(3).

Finally, subsection (b)(4) provides for jurisdiction where the defendant causes a tortious injury in or outside Maryland by an act outside Maryland "if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state."  § 6-103(b)(4).  The only portion of subsection (b)(4) that might apply to the facts presented here is a "persistent course of conduct."  Plaintiff's allegations, however, are insufficient to support a *prima facie* finding of "persistent course of conduct."  The e-mail,

standing alone, would not support such a finding.[7]  Even if the court considers Defendant's other contacts – participation as a referee in the annual Captain's Cup in Maryland – Defendant's contacts still do not amount to a "persistent course of conduct" in Maryland.  *See Camelback Ski Corp. v. Behning*, 307 Md. 270 (1986), *vacated and remanded on other grounds*, 480 U.S. 901 (1987), *opinion on remand*, 312 Md. 330 (1988), *cert. denied*, 488 U.S. 849 (1988) (finding that the defendant's contacts did not constitute a "persistent course of conduct" where the defendant sent a representative on one occasion to Maryland, the defendant's ski resort was listed in a commercial publication distributed in the Washington D.C.-Baltimore area, the defendant had a toll-free

---

[7]  Defamation cases cited by Plaintiff involving "single contacts" arose in jurisdictions with different long-arm statutes. *See, e.g., Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332-33 (1982)(5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983), ("The Mississippi long-arm statute, *supra* note 2, provides: 'Any nonresident person ... who shall ... commit a tort in whole or in part in this state against a resident ... of this state ... shall by such act or acts be deemed to be doing business in Mississippi.'") and *Rusack v. Harsha*, 470 F.Supp. 285, 290 (D.C.Pa. 1978)("Plaintiff relies on two sections of the old Pennsylvania Long Arm Statute, 42 Pa.Cons.Stat. § 8301 et seq., as the basis for assertion of personal jurisdiction over defendant under Pennsylvania law, specifically §§ 8303 and 8305.  Section 8305 provided: 'Causing harm by individuals:  Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant, or employee, shall have caused any harm within this Commonwealth on or after August 30, 1970, shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct.'")(footnote omitted).

number accessible to Marylanders, and the defendant sent brochures to Maryland residents and businesses upon request).

Plaintiff relies heavily on *First American First, Inc. v. National Association of Bank Women*, 802 F.2d 1511 (4th Cir. 1986), a case involving allegedly defamatory letters, to argue that personal jurisdiction exists.  In that case, the United States Court of Appeals for the Fourth Circuit found personal jurisdiction existed over a nonresident defendant based on Virginia's long-arm statute, Va. Code § 8.01-328.1(A)(4), which is similar to Maryland's § 6-103(b)(4).[8]  In *First American First*, the defendant, a non-profit organization that fostered career opportunities for women in banking and finance, had more contacts with Virginia than Defendant has in the present case.  The defendant had sold copies of its procedural manuals and informational journals to Virginia residents, approximately 1,150 of the defendant's 28,000 members lived in Virginia, and three percent of the total fees it collected were from Virginia members.  These contacts appeared to have taken place over a number of years.

Thus, Plaintiff has not alleged facts that satisfy any prong of the Maryland long-arm statute.  Even assuming Plaintiff could

---

[8] Virginia's statute provides for personal jurisdiction over a person who causes "tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth . . ."  Va. Code Ann. § 8.01-328.1(A)(4).

satisfy the long-arm statute, the question of whether Defendant's
contacts satisfy due process would still remain.  It is, at best,
doubtful that Defendant's contacts meet that test.  The Court of
Appeals recently adopted the Fourth Circuit's test for specific
personal jurisdiction in cases involving the Internet.  "In
determining whether specific jurisdiction exists, we consider (1)
the extent to which the defendant has purposefully availed itself
of the privilege of conducting activities in the State; (2) whether
the plaintiffs' claims arise out of those activities directed at
the State; and (3) whether the exercise of personal jurisdiction
would be constitutionally reasonable." *Realtime Gaming*, 388 Md. at
26 (citing *Carefirst*, 334 F.3d at 397; *ALS Scan*, 293 F.3d at 711-
12; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S.
408, 414 & n.8 (1984)).

In *Carefirst* and *ALS Scan*, the Fourth Circuit noted that the
act "of placing information on the Internet is not sufficient by
itself to subject that person to personal jurisdiction in each
State in which the information is accessed." *Carefirst*, 334 F.3d
at 399 (quoting *ALS Scan*, 293 F.3d at 714) (internal quotation
marks and brackets omitted).  To subject a defendant to personal
jurisdiction, the defendant "must have acted with the 'manifest
intent' of targeting Marylanders." *Carefirst*, 334 F.3d at 400
(citing *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir.
2002)).

13

Here, much of Defendant's e-mail is focused on Plaintiff's activities at the national and international level. The e-mail's emphasis is on the USAT elections, and there is no evidence that USAT has any connection to Maryland, other than having members in Maryland. Plaintiff himself admits that the e-mail was sent "in order to derail my efforts and the efforts of Mr. Pham in being elected to the USAT Board of Directors." (Paper 11, at ¶ 14). Presumably Defendant could not choose which subscribers to the listserv would receive his message. It was either all or none. On the other hand, three of the individuals who are the subject of Defendant's e-mails – Plaintiff, Mr. Holloway, and Mr. Pham – are from Maryland. The e-mail makes it clear that Defendant knew these men all resided in Maryland and that they are involved in Maryland tae kwon do activities. At least three listserv recipients are from Maryland, or roughly four percent of the listserv membership. Plaintiff has alleged sufficient facts to show that he felt the injury here in Maryland.

Plaintiff relies on *Calder v. Jones*, 465 U.S. 783 (1984), to assert that personal jurisdiction exists in Maryland. In *Calder*, the actress Shirley Jones brought suit in California claiming that a reporter and an editor from the *National Enquirer* had libeled her in an article written and edited in Florida. The Supreme Court held that California had jurisdiction over the reporter and editor, who were Florida residents, because "California [was] the focal

point both of the story and of the harm suffered."  *Calder*, 465

U.S. at 789.

> [T]heir intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent.  And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation.  Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article.

*Id*. at 789-90 (quoting *World-Wide Volkeswagen*, 444 U.S. at 297).[9]

The facts in this case are distinguishable from *Calder*.  The

allegedly defamatory article in *Calder* concerned the California

activities of the plaintiff and California was the focal point of

the article.  *Calder*, 465 U.S. at 788-89.  In addition, *Calder*

involved a defendant who had an ongoing commercial relationship

with California residents.    Finally, the *National Enquirer*

---

[9] Subsequently, the Fourth Circuit clarified the *Calder* holding by stating that where the plaintiff feels the effect of the libel is only part of the jurisdictional analysis.  The court explained that "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld."  *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035 (2003), (quoting *ESAB Group, Inc. v Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997))(internal quotation marks omitted).  To allow a court to find jurisdiction based solely on where the plaintiff feels the effect of the libel "would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff always feels the impact of the harm there."  *ESAB*, 126 F.3d at 626.

circulated more copies in California than in any other state. Here, Defendant is not a commercial actor and a significantly smaller number of recipients on the listserv are from Maryland.

With respect to the constitutional inquiry, Defendant's contacts do not satisfy due process. When the facts present even a close question, "[i]t would not be in the interests of the parties . . . to litigate this case in Maryland, only to have a ruling upholding the assertion of jurisdiction over [Defendant] reversed on appeal." *Coleman & Assocs.*, 887 F.Supp. at 120. Accordingly, the court finds that the proper course is either to dismiss this case so that Plaintiff may re-file in a more appropriate jurisdiction, or to transfer this case.

Neither party has suggested that the case should be transferred to New Jersey or another jurisdiction if the court finds that personal jurisdiction over Defendant is lacking. Defendant states that if the court grants his motion to dismiss, Plaintiff could re-file his lawsuit in New Jersey, where Defendant resides. (Paper 12, at 7). Because Plaintiff has not addressed the issue of transfer in his papers, Plaintiff will have until April 17, 2006, to file a motion seeking transfer. Defendant will have an opportunity to respond. If no motion is filed within the appointed time, the case will be dismissed.

**IV. Motion for Leave to File Surreply**

Plaintiff has filed a motion for leave to file a surreply. Surreply memoranda are not permitted unless otherwise ordered by the court, pursuant to Local Rule 105.2(a).  "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003), *aff'd*, 85 Fed.Appx. 960 (4th Cir. 2004).

Although Plaintiff claims in his motion that he seeks to file a "surreply," Plaintiff's proposed surreply does not attempt to address matters presented for the first time in Defendant's reply. Rather, Plaintiff seeks to bring the court's attention to a recent case decided by the Court of Special Appeals of Maryland, and to make additional arguments that personal jurisdiction exists.  To the extent that Plaintiff seeks to re-open briefing on the personal jurisdiction argument, Plaintiff's motion is denied.  Plaintiff also wishes to bring the  court's attention, *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md.App. 481 (2006).  The court is aware of the case, although it provides little support for Plaintiff's argument.

**V.  Conclusion**

For the foregoing reasons, the court finds that it does not have personal jurisdiction over Defendant.  Plaintiff a period of time within which to file a motion concerning transfer.  If no

17

motion is filed, the case will be dismissed.  The court also denies Plaintiff's motion to file a surreply.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge